**FORT WORTH NATIONAL BANK OF FORT WORTH, Texas, Appellant,**

v.

**Bose JONES et ux., Appellees.**

**No. 16731.**

Court of Civil Appeals of Texas.

Fort Worth.

May 13, 1966.

Rehearing Denied June 10, 1966.

---

Heard L. Floore and Richard U. Simon, Jr., Fort Worth, for appellant.

Huffaker & Green and Harold Green, Tahoka, for appellees.

## OPINION

MASSEY, Chief Justice.

Bose Jones and his wife brought suit for personal injury damages growing out of an automobile collision against the Fort Worth National Bank of Fort Worth, Texas. Based upon jury findings judgment was rendered for plaintiffs and the defendant appealed.

Judgment affirmed.

The collision was what is often described as a "rear ender". In open-type country Jones and his wife slowed or stopped their automobile for a "yield" sign at the intersection of two highways and the driver of the defendant vehicle which was following behind struck same in the rear.

Agency was not a matter of dispute. Defendant was convicted of liability in that the jury found that the driver of its automobile failed to keep a proper lookout, drove at an excessive speed, followed behind the plaintiffs' automobile too closely, and failed to apply brakes in time to avoid the collision. In each respect the act or omission of the agent was found to have constituted negligence and amounted to a proximate cause of the collision. The plaintiffs were acquitted of contributory negligence as to each act or omission advanced by the defendants.

It is apparent that the trial practically resolved itself into one where both parties' proof bore primarily upon the matter of personal injury damages. Of the total of 634 pages of testimony in the statement of facts 400 bore upon the injuries of plaintiffs Bose Jones and his wife Gertrude. The jury found Bose's damages on account of personal injuries at $7,250.00 and found Gertrude's damages on account of personal injuries at $10,000.00. There were other items such as medical expenses and automobile damage, going to make up the total amount of the judgment, but these may be disregarded in the discussion required under the points of error advanced.

The brief of the bank is primarily devoted to complaint of the jury argument made by plaintiffs' attorneys, specifically in the closing argument. It may be noticed that no request was made to reply to any matter first introduced during the course of closing argument—nor was any objection made during the course of that argument that plaintiffs' counsel was improperly raising new matter at that stage of the proceedings. Further, it may be noticed that the argument complained of was not objected to at the time it was made—the bank contending that the errors occurring were not of the type curable upon objection and/or that the manner in which they occurred was such as inhibited the making of a proper objection during the course of or at the end of the closing argument.

It is therefore apparent that if we should conclude that the errors complained of were of the type characterized as "curable", i. e., were such that an instruction from the court to the jury that statements made be disregarded and not considered would reasonably be obeyed by the jury and not given credence in the deliberations which followed, they would not amount to reversible error. We have so concluded.

Points one and two of the appellant bank complain that the plaintiffs' attorney, on closing argument, "purported to read to the jury from the deposition of Dr. Edward Driscoll * * * and misquoted the actual

testimony in the case to such an extent in such a manner that was calculated to and probably did prejudice the jury * * *", and that in the course of the final argument numerous improper and inflammatory statements and arguments were made and committed which could not have been cured by an instruction of the court, and "the effect of all of such arguments was reasonably calculated to and probably did prejudice the jury to such an extent that they rendered an improper verdict."

It is obvious from the brief that counsel are well aware of the provisions of Texas Rules of Civil Procedure 434 and T.R.C.P. 503, and that in order to obtain a reversal of the judgment of the trial court they are obliged to show not only the commission of error by adverse counsel, but to go further and demonstrate that the error was not such as was curable upon instruction by the trial court,—and, furthermore, that the error was such as was reasonably calculated to cause and probably did cause the jury to return a verdict other than that it would have returned but for its occurrence. It is apparently conceded that nothing complained of was reasonably calculated to cause and probably did cause jury findings to be made on the liability phase of the case other than those which would have been made but for the error, and certainly that is obvious and is our opinion,—but the real contention is that the answers returned by the jury in finding that Bose Jones' personal injury damages amounted to $7,250.00 and in finding that Gertrude Jones' personal injury damages amounted to $10,000.00 were those which counsel believe would not have been so found but for the occurrence of the errors complained of.

From the record as a whole it would have been unreasonable to have expected the jury to have found that there was no personal injury damages sustained by Bose Jones and no personal injury damages sustained by Gertrude Jones. Therefore the obvious contention is that the jury found excessive amounts when the damage issues

were answered. Points of error to be hereinafter commented upon raise the contention that the findings were excessive. However, there is no specific point of error which contends that the findings were against the great weight and preponderance of the evidence, other than such as is necessarily implied in any point of error which contends that a damage verdict is excessive.

We quote from the stenographer's notes on the closing arguments, as follows: "Well, let's see what Dr. Driskill said. Dr. Driskill said it could be that at this point the back broke down. Talking about Bose Jones. There isn't a doctor but what tells you that Bose Jones cannot walk today without suffering pain. Everyone of them says it. That it's real. Dr. Holmes this morning, what did he say? I copied it down practically verbatim. 'He walked with a cane, quite slowly with apparent pain.' And then asked as to whether or not he was faking that pain and he said 'No, sir. I made a slip-up test on him and it's real.' What's one of the last things that Heard Floore said? He said he started that day building up a cause of action and got his walking cane out so he could build up a cause of action. Now is that being fair, when their own doctor—they had a year to ask for an examination. The first time they ever mentioned it was in the court room the other day.

"MR. FLOORE: If the Court please, that's out of the record and not so, and I ask the jury be instructed not to consider it.

"MR. HUFFAKER: That is so, sir.

"THE COURT: Just a minute; just a minute. I will do the ruling. Overruled.

"MR. HUFFAKER: Dr. Driskill says that at this point certainly we know that we can go along with conditions, and Dr. Sanders says that it was an injury superimposed upon a condition. Dr. Jackson said it; Dr. Holmes said it. We go along, and when that impact took place—an im-

pact ladies and gentlemen that tore and rendered a car with enough force that krinkled the top of that car. When that condition happened it didn't take as much. And a man that had been able to support a family, a man that had been able to buy a new car, that had been able to pay for his home for ten straight years suddenly that back had more than it could take. And Dr. Driskill page 26, 36, read his deposition. 'At that point the back broke down'. Let's go to page 48 of Dr. Driskill's testimony. 'Would attribute his condition at this time, that he can't work, to the condition of his back'. When he examined him Dr. Driskill said he still had soreness and swelling in the lumbar area. He said, 'I think his condition is treatable and painful and permanent and wouldn't advise him to work.' Page 56, Dr. Driskill. And they want to holler. That's Dr. Driskill's testimony."

The testimony of Dr. Driscoll was by deposition. We have no way of determining from the record the page number of the deposition on which any particular testimony appears. The references here made to pages are the page numbers in the statement of facts. We quote therefrom on page 460 as follows:

"Q If he was able to do those up to the time of the injury, this car wreck, now he can't do them, what would you attribute as being the cause of his not being able to do those things since the car wreck, when he was able to do them before?

"A I don't know.

"Q You have no opinion?

"A No, sir.

"Q Could it just as well be something that happened in that collision?

"A It could be at that point his back may have broken down; as I indicated before, I don't know. I have no way of arriving at it. I'm not being facetious. There's no way I would know.

"Q Would it stand to reason, from a medical standpoint, a person had been able

to perform those tasks up to that time and since then, has not been able to perform those tasks, would you have a medical opinion as to the probability?

"A No, sir, I have not.

"Q You wouldn't care to attribute it to the car collision?

"A No, sir."

We quote further from the statement of facts, at pages 467–468, as follows:

"Q When a person is involved in a collision like these folks were, back last May, and they are still complaining of some symptoms—pain, disability—that has lasted up until February of this year, can you give any medical explanation as to why those things have continued so long?

"A Well, I have in the case of Bose. I think he has a condition that is treatable, and the nature of spondylolisthesis is such it can be painful. In the case of Gertrude, I think she does have cervical radiculitis, and I think she may have pain; but I don't know whether I can offer any explanation of why it continues.

"Q Whatever the extent her disability is now, would you say it is probably permanent?

"A. Well, I think she has a certain degree of permanency to her disability; yes, sir.

"Q Would your opinion be the same as to her husband, Bose?

"A Essentially.

"Q What type of work do you think Bose should be let do, if you say he should not stoop down, lift up; what should he do?

"A I don't think I would advise a man with a back like he has to take a job requiring heavy lifting. Believe with that condition he can(t) do that type of work; since he's having trouble, I don't think it advisable for him to carry out that type of work."

It is noticed from the testimony of Dr. Driscoll at other points in the deposition, several points in fact, that he was of the opinion that Bose Jones could hold a job; that anything that he could do before the collision occurred he should be able to do once again because in so far as his disability and discomfort was concerned such was due to a condition which existed prior to the time of the injury, and not due to the condition caused and occasioned by the injuries sustained in the collision—including an aggravation of the pre-existing condition. In general the testimony of Dr. Driscoll was to the same effect relative to the injuries Gertrude Jones sustained as the result of the collision, i. e., that any continuing pain and disability were the result of the congenital defect in the structure of her neck—not the result of the condition caused and occasioned by the injuries sustained in the collision—including an aggravation of the pre-existing condition.

■ An attorney purporting to quote the language of a witness during an argument rather than to draw a deduction therefrom is under a duty to quote it accurately. It would be as reasonable to treat as a deduction "at that point the back broke down" what the court reporter considered to be a quote (by counsel in his argument) from the deposition of Dr. Driscoll. The remainder of the argument listed in the paragraph would not amount to a "misquotation" from Dr. Driscoll's testimony, save the portion counsel quoted as: "I think his condition is treatable and painful and permanent and wouldn't advise him to work." As applied to the matter of his work the doctor's testimony actually was that in his opinion Bose Jones shouldn't take a job requiring heavy lifting and that it would be inadvisable for him to carry out that type of work.

■ Whether or not it was necessarily true as is contended that counsel for the bank was unable to make an objection at the time the argument was made because of his inability to find a page in the witness' deposition from which adverse counsel was purportedly quoting we do not believe that such would change the character of error from "curable" to "incurable". Our holding is that the error in the instant case, if any, was of the "curable" type and that it was waived when counsel failed to make an objection. Furthermore, our holding is that even treated as "incurable" error, it was nevertheless not such as was reasonably calculated to cause and probably did cause the jury to return a verdict other than that it would have returned but for the occurrence. Dr. Driscoll's testimony was from his deposition rather than as from a witness present and on the stand. We see no distinction to be made in a test of the question on appeal because thereof. His lengthy medical testimony made it plain that he attributed the plaintiffs' condition to pre-existent defects in both, that existent since birth in the case of Gertrude and that existent since an earlier injury to the back in the case of Bose. In our opinion the misinterpretation, "twisting", or even the alleged "misquotation" of Dr. Driscoll's testimony by the attorney for the plaintiffs during the closing argument was not such that it misled the jury and it was not probable that it had any effect on the verdict which was returned.

■ As applied to the bank's complaint of the plaintiffs' final argument—as a whole—we could write several pages. However, we believe that to do so would further lengthen this opinion for no good purpose. Our holding is that the error, if any, contended by the bank to have existed because of taint of the whole final argument was such that the alleged individual reprehensible elements therein were curable upon objection (and at times and as to some of such elements objections were made and sustained) and did not—considered cumulatively, and with the argument in its entirety—constitute reversible error under the test to be made under provisions of T.R.C.P. 434 and 503. Of course, tests under the provisions of these Rules are not required except in cases where the error is

"incurable" for it is only in such cases that a necessity exists to test the "reversibility" of an error. Rogers v. Broughton, 277 S.W.2d 121 (San Antonio Civ.App., 1955, writ ref., n. r. e.); 36 Texas Digest, Trial, ▮▮▮▮ "Objections and exceptions—Necessity".

The medical evidence amply supports the amount awarded in damages because of injuries to both plaintiffs. The trial court did not err in denying the bank's motion for remittitur reducing the same. We overrule its points of error contending that the verdict was excessive.

▮ That the trial court chose, in framing the charge to place the damage issues next after the plaintiffs' liability issues—and before the defensive issues of the defendant bank did not constitute error. Such matter is within the sound discretion of the trial court, and better left so. There was no abuse of discretion in the manner adopted for submitting the issues.

▮ The bank's contention that the trial court erred in not granting its requested instructions pertaining to plaintiffs' duty to keep a proper lookout to the rear immediately prior to the occurrence of the collision is overruled. As submitted the term "proper lookout" was defined as such lookout as an ordinarily prudent person in the exercise of ordinary care would have kept under the same or similar circumstances. As a contributory negligence issue the inquiry made was whether plaintiff Bose Jones failed to keep a proper lookout for the automobile driven by the bank's agent prior to the occurrence. This automobile was to the rear of that of the plaintiffs.

The controlling issue of the matter of Bose Jones' contributory negligence, as applied to the matter of proper lookout, was fairly submitted under the provisions of the Rules of Civil Procedure. See the Commentaries under Vernon's T.R.C.P. 279, at the section by former Chief Justice Alexander, and under title, "No reversal where 'controlling issues' submitted". It is obvious that if the requested instruction of the bank had been given it would have presented to the jury nothing more than a varying shade of the same issue.

Judgment is affirmed.