E. L. WHITE, SR. v. E. R. WHITE.

Western Section.    March 1, 1929.

Petition for Certiorari denied by Supreme Court, May 27, 1929.

I. W. Pope, N. R. Barham, L. L. Fonville and Martin Exum, all of Jackson, for plaintiff in error.

Murray & Murray and Anderson & White, of Jackson, for defendant in error.

HEISKELL, J. The plaintiff, E. L. White, brought this action in the circuit court of Madison county, against E. R. White, seeking damage which it is alleged the plaintiff sustained while traveling as a passenger or an invited guest in an automobile belonging to the defendant, E. R. White, and which was being driven and operated at that time by the wife of the defendant as his agent and servant. After the suit was brought, the plaintiff, E. L. White, died from the effects and result of the injuries, and this case has been since, and now is being prosecuted by his widow, Mrs. Pattie White on behalf of herself and her children and heirs at law of the deceased, E. L. White.

There are three counts to the declaration. The first sets out the facts relied on to show common law negligence. The second merely claims in addition that the car was running more than thirty miles an hour, the rate allowed by law. The third, that the car was used as a family car. This third count was practically ignored in the trial, and no exception taken in regard to it, so it may be considered as eliminated. The defendant pleaded not guilty. The case has been before the court and jury three times. There were two mistrials because the jury could not agree and on the third trial a verdict was returned in favor of the defendant, from which the plaintiff has appealed.

There is not much controversy about the facts.

In the early part of October, 1926, A. C. White had a communication to the effect that an uncle who resided in Culleoka, Maury county, Tennessee, was sick and that he wanted the said A. C. White to visit him. This fact was told to E. L. White by his brother A. C. White, and in conversation these two brothers agreed that if they had some way to go, they would pay a visit to this uncle.

After this conversation, E. L. White was at the place of business of his son, E. R. White, the defendant, and told him about the conversation with A. C. White and the communication with his relatives in Maury county, and stated to the defendant that he would like to go. The defendant then asked plaintiff why he did not go, saying that he could not carry him himself, but that he would get his wife to take them in his, defendant's car. Then the defendant called his wife and asked her to take his automobile and go with them on the trip, and to take them wherever they wanted to go. The defendant then called Mrs. James Talbot, a daughter of A. C. White, and asked her to go with them to which she agreed. The next morning, the party consisting of E. L. White, A. C. White, Mrs. E. R. White, wife of defendant, and Mrs. Talbot, departed for

Culleoka in Maury county in the automobile of the defendant. The automobile was a five passenger two-seated six cylinder gas propelled, high powered car and was known under the trade name as a Buick Sport Model. Mrs. White drove the entire trip to and from Culleoka. Mrs. Talbot occupied the front seat with the driver, and the two elderly gentlemen occupied the rear seat. This formation was maintained throughout the entire trip. The plaintiff was an old man of seventy-nine years of age and his brother was a little older than he. Neither of these knew anything about the operation of the car; neither ever having driven one, and the plaintiff, it is shown, never rode in one to any great extent.

E. R. White did not go on the trip, but asked his wife to drive the party in his car. He was asked whether his father and uncle were to use the car as they saw fit for the purpose of making the trip, and answered "yes, they had my consent to use it as they saw fit." "You didn't undertake to try to control and direct the use of it at any time after it left your possession, did you?" "No, sir."

Mrs. E. R. White was asked if Mr. E. L. White had become dissatisfied with the manner in which she was driving and asked her to relinquish the operation of the car if she would have done so, and she said she would if he had asked her to.

After the party had spent two nights and one whole day in Maury county, they started to their homes in Jackson by public road, which crosses the Tennessee at Savannah, and while they were traveling along a straight stretch of road some few miles west of Savannah, the driver observed a wagon and team, coming toward them along a long level stretch of road, driven by a man coming meeting them, and some distance in front. The team was on the opposite side of the road which was wide enough for them to pass in safety, the road being more than twenty-one feet wide at this place, and she slowed or checked the speed down to about eighteen or twenty miles per hour for a short distance. This was done in order to determine whether the team would frighten and when it seemed to the driver of the car, Mrs. E. R. White, wife of defendant, that they would not frighten, she began to accelerate her speed and by the time she had gotten to and was passing the team she was traveling at a speed of at least thirty-five miles per hour. About the time the automobile approached near the team, the mules suddenly turned, throwing the end of the tongue of the wagon toward the side of the auto. Thereupon in order to try to prevent a collision, the driver, Mrs. White, quickly turned the automobile to the right and away from the wagon and applied the brakes, and the automobile continued on into the ditch on the right hand side of the road, a distance of about four car lengths, where it stopped so suddenly

and with such violence that the plaintiff's intestate was thrown violently against the side or door of the car and fractured his hip and received the injuries for which this suit is brought. The stopping of the car was so sudden and violent as to throw A. C. White up against the top of the car.

Defendant, on each trial moved for a directed verdict at the close of the proof, preserved wayside bills of exception as to the first and second trials and now presents a petition for writ of error and assigns error on the refusal by the court of said motions.

Plaintiff's first assignment is that there is no evidence to support the verdict, but in the brief it is merely stated that this assignment will be discussed subsequently in connection with other related subjects. Therefore, we will not give the first assignment any separate consideration.

We will first consider the eighth assignment, because it involves one of the main controversies in the case. It is as follows:

"The court erred affirmatively and prejudicially against the plaintiff in the general charge as follows:

" 'It is contended by the defendant that the plaintiff borrowed the automobile in which to go upon a personal mission wherein the defendant had no interest; that the plaintiff being unable to drive the car, defendant asked his wife who was a competent and skilled driver to drive said car on said trip; that she did so solely for the accommodation of the plaintiff; that when he loaned said car to the plaintiff defendant resigned for the time being and while said car was being used by the plaintiff, full and entire control thereof and full and entire control of his wife in the operation thereof on said trip; that on said trip said car was being operated and driven for the sole accommodation and subject solely and entirely to the direction and control of the plaintiff, and while being so operated said car was driven by defendant's wife into a ditch causing the injuries to the plaintiff for which he sues. Now if these are the facts as shown by the proof, the plaintiff would not be entitled to recover anything.'

"This was error for the reason that there was no proof on which such contention as is set forth therein that plaintiff borrowed the automobile. There was no proof that plaintiff directly or indirectly exercised or attempted to exercise control of the operation of the automobile.

"This was error also because it sets forth a statement of facts or theory for the defendant directly in conflict with the uncontroverted evidence in the case."

Just preceding this part of the charge objected to, the court had stated plaintiff's contention to the jury, that the driver of the car

was the agent of defendant and not in any way the agent of, or under the control of the plaintiff and had told the jury that if the facts of plaintiff's contention were made out by a preponderance of proof, then they should find that the wife of defendant was his agent in the operation of said automobile.

Upon this question the facts of the present case are well nigh the same as in the case of Dedman v. Dedman, 155 Tenn., 243. The same conflicting contentions, the same basis for these contentions in the evidence. The court in that case says: "The trial judge submitted this question to the jury and we think he was right." That is what the trial judge did in this case, and we see no error in the way he submitted the question. There is evidence in the record to support the finding of the jury either way. If this had been the only question, the verdict would have been conclusive, but the jury could have found this question for the plaintiff and have based the verdict for defendant on some other issue or issues. It is therefore, necessary to consider other assignments of plaintiff. What we have said, however, disposes of the contention of defendant in favor of a directed verdict.

The ninth assignment is based upon the refusal of a special request by plaintiff upon the same subject, as that part of the charge just considered under the eighth assignment. We think the charge given was correct and that the special request was properly refused. It contained only a partial statement of the facts upon which the question of the agency of the driver depended, whereas, the court had fully and fairly stated the facts contended for by both parties.

The second assignment is:

"The court erred affirmatively and prejudicially to the rights of the plaintiff in charging the jury as follows:

" 'The defendant's contention in the case is that the driver of the automobile upon approaching the wagon and team was driving said car in a careful manner, having the same under full control, and not driving at an excessive rate of speed, and upon approaching the said wagon, the team became frightened and it appeared to the driver that a collision was about to occur, and acting upon her best judgment she turned the car to the right, and the same was run into a ditch and the plaintiff's intestate was injured, and if you find as a fact that the driver of the car, finding herself in this emergency and you find in said emergency she used her best judgment in handling said car, and you further find that such emergency was not brought about by the driver of the automobile and that such emergency could not by the exercise of reasonable care have been fore-

seen or anticipated by said driver, the defendant would not be liable and it would be your duty to return a verdict that you find for the defendant.'

"This was error, 'I,' even if all the facts stated are true, the defendant would not be entitled to a verdict. '2', if the driver was running the automobile at a rate of speed in excess of thirty miles per hour, as she admits, the jury might not deem it excessive and yet under the law she was guilty of negligence, and the failure of the court to so state was error. '3', The court should have said to the jury that if the driver was running the automobile at a rate of speed in excess of thirty miles per hour this was negligence on her part, and if this negligence caused or was the proximate cause of the injury, then the defendant would be liable and this part of the charge in effect negatives this applicable proposition of law."

It is admitted that the charge would have been correct if the court had told the jury that inasmuch as the driver was running over thirty miles an hour, if this was the proximate cause of the injury, then defendant could claim no exemption from liability by reason of the sudden .emergency. If the contention of plaintiff is technically correct, yet before the court can hold the omission to be reversible error, we must conclude that it affected the result of the trial. In order to find this, we must be able-to see how the jury might have found that running thirty-five miles an hour instead of thirty was the proximate cause of the injury and we cannot see how the jury could have so found. There is little if any conflict in the testimony as to how the accident happened. The car was running on the right hand side of a good, wide road coming toward Jackson and met a wagon drawn by a team of mules. The mules showed a disposition to be quiet until the car was about to pass them, when they began to rear up, pulling the tongue of the wagon toward the middle of the road so that it would have run into the car if the driver had not swerved suddenly to the right. If the car had not so swerved, it would have struck the mules or the tongue of the wagon, and in so turning to the right, the car ran into the shallow ditch or drain on the side of the road. If the mules had not turned, there was ample room for the car to pass. The car had six cylinders and operated silently with practically no vibration when running thirty-five or forty miles per hour. There was no noise involved in the pick up in speed and the car made no more noise running at thirty-five miles per hour than at twenty. The car was under control. Such being the facts, we cannot see how the difference between thirty and thirty-five miles an hour could be considered the proximate cause of the injury.

The third and fourth assignments are based upon the refusal of special requests by plaintiff on this subject of running over thirty miles an hour. It is covered by what we have just said under the second assignment.

The fifth assignment is practically the same, with the addition that if the jury find that the driver did not have the car under control. We find no proof that the car was not under control. Therefore, for this reason also this charge should not have been given.

The sixth assignment is based upon the refusal of special request, based upon the same idea of speed over thirty miles an hour without saying anything about proximate cause of the injury. This was properly refused.

The seventh assignment complains of the refusal of a request that is a repetition of others refused before and which we have considered.

The tenth assignment involves the refusal of a special request on the subject of contributory negligence. The court had given a full and correct charge on this subject. A portion of it was duplicated in the special request and the remainder of the special request was not in proper form to be given separately even if correct in meaning.

The eleventh assignment is as follows:

"The court erred in refusing to give in charge to the jury, plaintiff's special request No. 3, which was presented to the court after the general charge had been delivered and before the jury had retired, as follows:

" 'Gentlemen of the Jury, The fact that the defendant, Ernest White is the son of the deceased E. L. White and of the plaintiff, Mrs. Pattie White, must not influence you in the consideration of this case and must not affect your verdict in any way. The case should be tried and decided alone on the evidence heard by the jury, and the law as given to the jury by the court in the same way as if the parties were strangers.' "

We do not think it can be held to be reversible error to refuse to charge the jury that they must not be influenced by improper motives and to specify the various improper considerations that might influence them, and besides, we do not think this refusal affected the result.

The twelfth assignment is as follows:

"The court erred in refusing to permit counsel for plaintiff to fully present argument to the jury in behalf of plaintiff. The facts in reference thereto being stated in the bill of exceptions, tr. p. 290 as follows:

" 'The argument in the case was limited by the court to one hour for each side, there being three attorneys for the plain-

tiff, Mr. Exum opened the argument for the plaintiff, but did not consume all the time allowed to plaintiff. At the conclusion of Mr. Exum's argument, the attorneys for the defendant stated to the court that they would not argue the case. Thereupon Mr. Pope, attorney for plaintiff, requested the court to permit him to argue the case for the plaintiff, which upon objection by the defendant, the court declined to do, and to which action the plaintiff then and there excepted.'

"This was error for the reason that the court had allowed one hour to each side for argument and it was error for the court to close the argument for plaintiff until the time allowed had all been consumed. It is only when plaintiff has closed argument in chief before consuming all allowed time, that defendant can, by waiving argument, close argument in the case, and the plaintiff had made no such announcement in this case. The mere fact that one of plaintiff's attorneys had spoken in the case was not sufficient to warrant the court in assuming argument in chief had been concluded for plaintiff and this is what was done in this case."

This was a matter in the discretion of the court. Presumably counsel for plaintiff exhausted all the time wanted in opening the case and saved the rest to reply to counsel for defense, and when counsel for the defense declined to argue the case, there was nothing to reply to. To say the least, this court cannot reverse the case on this action of the court below.

Our Supreme Court at its December term, 1928, delivered for publication a strong opinion on the Act of 1911 Ch. 32 in the case of Carney v. Cook, Administratrix, from the circuit court of Davidson county. The Court of Appeals had reversed the case for error in the charge. On certiorari the Supreme Court reversed the Court of Appeals. After quoting the language of Ch. 32 Act of 1911, with which we are all familiar, the court says:

"Keeping in mind the provisions of the statute just quoted it would have to appear to us affirmatively that the charge of the trial judge upon common law negligence influenced or affected the verdict of the jury, before we would be justified in reversing the judgment below on that account. . . .

"We cannot escape the Act of 1911 in disposing of this case. We do not think a mere abstraction of the trial judge in delivering his instructions to the jury invaded any constitutional rights of the parties.

"In the present case it does not affirmatively appear that the jury allowed any damages for mental and physical suffering. This court will not presume that the jury allowed such damages where the uncontroverted evidence shows there was no mental

or physical pain; particularly in a case like this one where the court can see that the amount allowed as compensation for such a life, measured by the present purchasing power of a dollar, is exceedingly moderate.

"This is a proper case for the application of the Act of 1911, and is in keeping with the modern progress of civil procedure."

The present case in many places calls for the application of this statute in favor of an affirmance. And yet it is scarcely necessary to go so far as the statute. This court in examining the record cannot avoid a conclusion as to what evidence controlled the jury. There were two outstanding issues. The agency of the driver of the car, and the sudden emergency caused by the fright of the team. We cannot resist the conclusion that this last issue controlled the verdict and that many of the contentions of the plaintiff had no weight with the jury and would have had none, no matter how the court had charged the jury. It is therefore a strong case calling for a refusal to disturb the verdict even if there be minor points in which the action of the trial court is subject to criticism.

All assignments of error of both plaintiff and defendant are overruled and the judgment of the lower court is affirmed. Plaintiff in error and surety on appeal bond will pay the costs of appeal.

Owen and Senter, JJ., concur.