BOBBY G. MYERS and SAMUEL NELSON NUNLEY,
Plaintiffs in Error, v. STATE OF TENNESSEE,
Defendant in Error.—470 S.W.2d 848

April 23, 1971.

Certiorari Denied by Supreme Court September 7, 1971.

316

Thomas D. Hembree, Tullahoma, for Nunley.

Raulston & Swafford, Jasper, Charles Kildgore, Tracy City, for Myers.

David M. Pack, Attorney General, Everett H. Falk, Assistant Attorney General, Harry C. Templeton, District Attorney General, Nashville, for defendant in error.

RUSSELL, J. Bobby G. Myers and Samuel Nelson Nunley appeal in error their convictions for concealing stolen property of a value in excess of One Hundred Dollars ($100.00) and resultant penitentiary sentences of not less than three (3) nor more than five (5) years.

On July 30, 1968, a 1967 Chevrolet Camaro automobile belonging to a Mr. Robert Benns of Hamilton County, Tennessee, was stolen from a parking lot at a radio station in Hamilton County where Mr. Benson worked. On August 2, 1968, Mr. Benns went to Tracy City in Grundy County and identified a burned carcass of his automobile. The car had been stripped and certain items of personal property, including a flashlight marked W F L I Radio, had been taken from the trunk.

On August 7, 1968, T.H.P. Trooper Ronald Baggenstoss received reliable information that a felony was being committed in a wooded area of the mountainous region around Tracy City. Apparently the information had to do with stolen automobile tires. He and one Ned Geary proceeded to the area and heard noises apparently being made by people in the woods. Rather than proceeding, they left and got Sheriff Winton and Deputy Hargis to close in with them. The officers proceeded on

foot down an old road, past signs of past car strippings, deep into the woods. They finally came upon a small clearing, wherein was a pick-up truck. Plaintiff-in-error Myers was in the truck, which was his; and Nunley was on one side of the truck and one Alvin Seagroves on the other. High weeds surrounded the truck, so that the officers were within about twenty (20) feet of it before they could clearly see it and the three men. All three men were known by the sheriff. The truck had wooden side panels and was loaded with automobile parts. Visible without search were tires and an automobile air conditioner radiator. A ''come-along'' hoist was seen affixed to a tree limb at the scene.

Sheriff Winton called to the subjects to hold it and that they were under arrest. One of the men said, ''Let's go, boys'', and Nunley and Seagroves fled the scene. Myers was arrested at that time, and a subsequent inspection of the truck disclosed that, among many other items, the engine from Mr. Benns' stolen car and the flashlight inscribed W F L I Radio were therein. It is for the concealing of those stolen items at that time and place that all three men were convicted. Seagroves has not appealed. Myers and Nunley put on no proof.

▮ Both contend, in their respective assignments of error, that the verdict of the jury is contrary to the law and the evidence and that the evidence does not support the verdict. They specifically rely upon an alleged failure of the State to prove guilty knowledge that the property had been stolen. We find guilty knowledge fully established circumstantially. There is no question but that these men were in possession of recently stolen property, and they offered no explanation. The unexplained posses-

sion of recently stolen property raises an inference that the possessor stole the property. Peek v. State, 213 Tenn. 323, 375 S.W.2d 863. This inference has been applied recently to infer guilty knowledge where receiving stolen property is concerned. Tackett v. State, 223 Tenn. 176, 443 S.W.2d 450. Such an inference logically also attaches to such unexplained possession of recently stolen property when the charge is concealing.

But there is much more circumstantial evidence of guilty knowledge. The practice of stealing automobiles in East and Middle Tennessee and carrying them to the wooded mountainous area involved here to be stripped and burned is so widely practiced and generally known that we can acknowledge judicial notice of it. These men were in that area for no imaginable legitimate purpose, equipped with a pick-up truck with concealing solid sideboards, with a hoist of a type commonly used for lifting automobile engines installed to a tree there, with automobile tires and the radiator for an automobile air conditioner readily visible, and with the truck bed loaded with miscellaneous automobile parts. To completely foreclose the question of guilty knowledge on his part, Nunley fled the scene when arrest was attempted. No other reasonable hypothesis except that of guilty knowledge is suggested or supported by this evidence.

We therefore overrule the assignments of error questioning the legal sufficiency of the convicting evidence. And this also disposes of the assignments contending that it was error for the trial judge to overrule their respective motions for directed verdicts of acquittal. Since the evidence is found to be sufficient to sustain the convictions, it is equally sufficient to support the action

of the trial judge in denying motions for directed verdicts of acquittal.

Plaintiff-in-error Myers assigns as error the admission into evidence of items seized in the truck. He contends that his warrantless arrest was unlawful and without probable cause, and that the evidence obtained pursuant thereto from the truck was inadmissible.

We find this assignment to be without merit. An officer may arrest a person without a warrant, upon probable cause for believing that a felony has been committed and that the person committed the felony. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Thompson v. State, 185 Tenn. 73, 203 S.W.2d 361. What constitutes probable cause depends upon the facts and circumstances of each case. We hold that the State's evidence in this case clearly supports a showing of probable cause and that the search and seizure of the stolen property was not in conjunction with an unlawful arrest, but rather a lawful one. And in that context, it seems established that this motor vehicle, due to its mobility, could be searched without a warrant. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. In that case the United States Supreme Court in quoting from Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 said:

" 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' "

Here, we observe from the photographs in evidence, that it was rather obvious, even without searching, but by merely looking into the bed of the pick-up truck, that it was filled with such an assortment of automobile parts that they practically shouted the fact that they were the fruits of car stripping. It remained only for the officers to determine from whom the various parts were stolen. Certainly they had the right to impound this property as evidence. We hold the seizure to have been legal and the introduction into evidence of the fact of Mr. Benns' stolen engine and lantern being therein proper.

Finally, Nunley assigns as error the fact that the trial judge ordered the District Attorney General to make a closing argument to the jury after all defendants had chosen to waive their arguments. The State's opening argument was made by the Assistant District Attorney General. Before he spoke one defendant's lawyer said that he would argue, one said that he'd wait and see, and the third said that he would not. The Court then announced that those who wanted to argue could do so, and the District Attorney General could close. However, after the opening all three announced that they'd waive their argument, and objected to further State argument. The District Attorney General was fearful that it would be erroneous for him to close; but the trial judge felt that defense counsel had misled the Court and the District Attorney General and that this was not proper, and he ordered the District Attorney General to make a closing argument. What was said in either of the State's arguments does not appear.

 Generally, the State has the opening and closing arguments. The closing argument is limited to a rebuttal of what has been argued. But the trial judge has a discretion in controlling matters of argument; and where, as here, the Attorney General would have been denied a chance to personally argue because he had been told that a defense argument would be made before he assigned the opening argument to his assistant, we hold that the trial judge did not abuse his discretion. Since the content of the argument does not appear in the record, nor was any part of it objected to, this assignment could not rise above the status of harmless error in this case. T.C.A. sec. 27-117.

We affirm these convictions.

Oliver, J., concurs.

Galbreath, J. (dissenting).

I believe it would be a dangerous departure from well settled law to allow the State to argue its case twice. The only reason the plaintiff having the burden of proof in a lawsuit has for argument after the defendant has presented its theory and commentary on the case is to answer or respond to the propositions raised by such argument. Or, as the State points out in its brief, the established procedure in Tennessee is:

"The evidence being completed, the argument commences. The counsel having the affirmative, or that side upon which the *onus probandi* rests, is entitled to the opening and concluding argument. If there be but one on that side, he will be entitled to an opening and also

a concluding argument. If there be several on each side, the order of argument is under the control of the court, but they are usually allowed to speak alternately. If, in the concluding argument, new authorities are adduced, the opposite party may comment on those authorities, but no more." Caruthers' History of a Lawsuit, 8th Edition, 1963, page 419.

The importance of argument in our adversary proceeding to settle disputes at law cannot be overemphasized. The right to be heard by counsel is so basic that it is firmly imbedded in both national and State constitutions. Article I, Section 9, Constitution of Tennessee; 6th Amendment, United States Constituion. Of course his right may be waived, and its exercise is in large measure controlled by the sound discretion of the trial court. Although the constitutional right to counsel inures to the accused in a criminal prosecution, there is no doubt that the State also has the basic right to be represented by counsel and the corresponding right to waive this right.

None of the above observations, while valid to this discussion, are involved in the case before us. The defendants exercised their right to waive argument by counsel. The State did not. It was properly permitted to present its argument and did so. This concluded its right to be heard unless and until it became necessary for a reply to be made to argument on behalf of the defendants.

It is recognized by all those associated in the practice of criminal law that the right of the State to rebut the argument of a defendant is a potent weapon in its arsenal to combat crime on behalf of its client, society itself. It is justified because the defendant in such a controversy

is armed with the presumption of innocence with the burden on the State to overcome this weighty factor. To allow the State to have two arguments to one is thus considered proper. Or to allow it to have one argument to none in instances wherein the defendant does not deem it necessary to argue at all is permissible. But to allow the State to have two or more arguments to none is on its face discriminatory and violates the basic element of fairness that must permeate every criminal prosecution —or for that matter any prosecution, criminal or civil. In upholding this rule of practice in a civil case in which the plaintiff opened but did not consume the time allotted for argument and then insisted on using the remainder of the time after the defendant waived its right to argue, the Court of Appeals in an early case said:

"Presumably counsel for plaintiff exhausted all the time wanted in opening the case and saved the rest to reply to counsel for defense, and when counsel for the defense declined to argue the case, there was nothing to reply to." White v. White, 9 Tenn.App. 654.

If this well settled rule of law and procedure is vital for the protection of the rights of a defendant sued in tort, it should certainly be preserved to protect the rights of those accused of crime.

I respectfully dissent.