Johnny WALLIS, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Oct. 19, 1976.

Certiorari Denied by Supreme Court Jan. 17, 1977.

Shockey, Boehm & Pinchak, Chattanooga, for appellant.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., David Rotroff and Jerry Sloan, Asst. Dist. Attys. Gen., Chattanooga, for appellee.

DUNCAN, Judge.

## OPINION

The appellant, Johnny Wallis, was convicted in the Hamilton County Criminal Court, Division I, of receiving stolen property, and received a penitentiary sentence of not less than 3 years nor more than 6 years.

In one of his assignments of error, the appellant maintains that his counsel was denied an opportunity to rebut the State's jury argument. We find merit to this assignment.

The record shows that at the conclusion of the proof, the trial judge asked the parties' counsel if they wished to address the jury. The State's counsel replied in the affirmative, stating that he would open. The record shows no response by the appellant's counsel. The State's counsel then made a short argument to the jury, generally explaining to them their duties and responsibilities; however, he did not comment on the facts of the case. At the conclusion of the State's opening argument, the appellant's counsel, obviously seeing the advantage that might accrue to his client because of the innocuous nature of the State's opening argument, declined to present an argument, stating: "Your Honor, the defendant will stand on the proof."

The judge then stated that he intended to permit the State's counsel to close the arguments, and offered the appellant's counsel the opportunity to reconsider his decision not to argue. The appellant's counsel commented that he wanted "an opportunity to rebut any comment or any jury argument made by the State"; however, the court advised him that if he waived argument, the State could still present a closing argument, and that appellant's counsel would "have nothing to say to the jury" after the State's argument. The court then addressed the State's counsel:

"Mr. Rotroff, if you have anything further which you would have said in your closing argument, you may conclude it; the defendant, through his attorney, having waived his right to address the jury."

The State's counsel then presented a closing argument to the jury which was three times longer than his opening argument. In the closing argument, he very competently, effectively, scathingly, and specifically attacked the appellant, his witness, and the defense theory, at the same time pointing out the meritorious reasons why the jury should accept the State's proof and its theory. After this, the appellant's counsel requested the opportunity to present a rebuttal argument, but this request was denied by the trial court.

We realize that on some occasions when the State waives its opening argument, or only presents a mild and not overly harmful opening argument, a defendant may waive any argument so as not to open the door to a scathing closing rebuttal by the State. For strategic reasons, a defendant may do this simply to have the case submitted to

the jury without having facts that could be quite harmful to him recalled by the prosecution in its final argument.

█ In Tennessee, the uniform practice and procedure in the trial of criminal cases accords the State the right to open and close the argument to the jury, subject always to the discretionary authority and power of the court to regulate and control arguments of counsel to meet the exigencies of particular situations. Absent a manifest abuse of the trial court's discretion to the prejudice of the defendant, the appellate court will not intervene to revise its action. *Myers v. State,* 3 Tenn.Cr.App. 414, 462 S.W.2d 265 (1970).

█ The general law that gives the State the right to open and close arguments is subject to some qualifications. If the defendant waives the right to respond to the State's opening argument, then ordinarily the State should have no right to present an additional argument. In an early civil case, the Tennessee Court of Appeals held that if the plaintiff's counsel gave an opening argument but did not consume the time allotted for argument and thereafter insisted on using the remainder of the time after the defendant had waived his right to argue, then the plaintiff had no right to give a closing argument. *White v. White,* 9 Tenn. App. 654, 661 (1929). In that case, the court said:

> "Presumably counsel for plaintiff exhausted all the time wanted in opening the case and saved the rest to reply to counsel for defense, and when counsel for the defense declined to argue the case, there was nothing to reply to."

In *Tindall v. State,* 99 Fla. 1132, 128 So. 494, 498 (1930), the Supreme Court of Florida said:

> "While an attorney may not be required to make the opening argument (or if he makes a pretended one), yet the trial court, exercising its discretion, may permit opposing attorney to reply to any new material matter brought out on the former's second or closing argument. Otherwise serious damage may result and possibly a farce be made of what ought to

be an important step in the trial. In fact, it may even constitute reversible error for the trial court to unreasonably limit the time for argument to the jury. *May v. State,* 89 Fla. 78, 103 So. 115. See 16 C.J. 893, § 2234. Also where the attorney, having the opening argument, feigns or only makes a short statement, the opposing attorney may thereupon waive his right to argument and thus deprive his adversary of a reply; as was held in the case of *Germak v. F.E.C. Ry. Co.,* 95 Fla. 991, 117 So. 391, 392, wherein this court said:

> > 'The defendant's counsel having made no argument, there was nothing to be met or replied to by counsel for the plaintiff, and the presentation rested upon the opening argument for the plaintiff.' "

In 3 Wharton's Criminal Procedure § 521, at 441–42 (12th Ed. 1975), the following statement is made concerning jury arguments:

> "Ordinarily, the prosecutor is entitled to make the opening argument and, after the defendant presents his argument, the prosecutor is entitled to make the closing argument in rebuttal. The prosecutor's closing argument is limited in scope; he is allowed only to reply to arguments made by the defendant. To allow the prosecutor to introduce new matter during his closing argument would deprive defendant of the opportunity to respond thereto."

In *Myers v. State,* 4 Tenn.Cr.App. 314, 322, 470 S.W.2d 848, 851 (1971), this court held that the trial court did not abuse its discretion in ordering the Attorney General to give a closing argument after all defendants had waived their arguments. A significant and material distinction between that case and the present case is that in *Myers,* counsel for one of the defendants had stated at the outset that he desired to present an argument.

In *Myers* it should be pointed out that the content of the argument was not in the record. Further, in that case, it was point-

ed out that "the trial judge felt that defense counsel had misled the Court and the District Attorney General and that this was not proper, . . ." The *Myers* court concluded its holding by saying:

"Generally, the State has the opening and closing arguments. The closing argument is limited to a rebuttal of what has been argued. But the trial judge has a discretion in controlling matters of argument; and where, as here, the Attorney General would have been denied a chance to personally argue because he had been told that a defense argument would be made before he assigned the opening argument to his assistant, we hold that the trial judge did not abuse his discretion. Since the content of the argument does not appear in the record, nor was any part of it objected to, this assignment could not rise above the status of harmless error in this case. T.C.A. § 27–117."

In the present case, unlike *Myers*, the Attorney General's arguments do appear in the record, and the record shows that the appellant's counsel duly interposed objections to the argument proceedings that occurred.

■ Thus, the true rule which we glean from the cases is that it is in the discretion of the trial court whether a defendant's counsel should be allowed to rebut the closing argument of the attorney general. In our opinion, it would be only in exceptional circumstances where the defendant's right to rebut the State's closing argument would accrue; however, we think those exceptional circumstances are present here. After the appellant waived his right to respond to the Attorney General's opening argument, we think it was error for the trial court to permit the Attorney General to present a second argument in which he introduced an entirely new line of argument. The error was further magnified when the trial court refused to permit the appellant's counsel to respond to the only real argument made by the Attorney General.

The right to be heard by counsel is basic to the rights of any defendant, and such right is guaranteed by both the Federal and State Constitutions. Article I, Section 9, Constitution of Tennessee; 6th Amendment, United States Constitution. In the present case, we think the appellant's right to be heard by counsel has been abridged, and in our opinion, the appellant was prejudiced thereby. Thus, we sustain this assignment of error.

■ Next, we find it was also error for the trial judge to indicate to the jury that the defendant's only witness, Richard Lambert, had testified falsely.

Lambert had been jointly indicted with the appellant, had entered a plea of guilty, and had a petition for probation pending at the time of the trial. When he was called as a witness, the trial judge asked him, outside the presence of the jury, if he and his attorney had "discussed any possible ill effects on his testifying." In the jury's presence, the appellant's counsel asked him: "I'll ask you whether or not the Court has instructed you, prior to your testifying, as to whether it may have a bearing on whether you get that suspended sentence or not?" The witness replied, "Yes, sir."

Thereafter, the trial judge made these comments in the presence of the jury:

"And I might also point out that what the Court advised Mr. Lambert was not quite what you brought out before the jury. I didn't mention that this would have any effect whatsoever on his being considered for a suspended sentence. I tried to bring to his attention to find out whether or not he had considered whether he had to testify or not, and whether you had advised him in any way whether he should testify or not since you represented him, as it has come out. So he has no threat in any way that this will have any effect on him. It's certainly a situation that he should have considered and should have been advised on, and to what extent I think he's been advised has perhaps come out. But I want the jury to understand that that was not what the Court told him. So if there's anything else with this witness, either side may ask him."

From these statements, obviously the jury could only conclude that the trial judge believed that appellant's witness had testified falsely in connection with the matter under discussion. Perhaps the witness had testified falsely, but we think it was not proper for the judge to give the jury his opinion; however, this error would not rise above the harmless error category since the trial judge, in his charge to the jury, left the question of the credibility of the witnesses up to the jury.

█ In another assignment of error, the appellant alleges that he was prejudiced because of certain remarks made by the State's counsel. In questioning the State's undercover agent, Don Morgan, about his use of an alias, the State's counsel commented: "You like to live and breathe and eat." The court sustained the appellant's objection to this remark; however, during the State's counsel's closing argument, the trial court overruled the appellant's objection to the following portion of his argument:

"And he used an alias, you know, Gordon. He used an alias and he took notes, and so that's bad, you know, that's bad because he didn't want to get killed maybe, because he wants to protect his identity."

In our opinion these remarks were improper but, standing alone, we do not think they would constitute reversible error. Nevertheless, they should not be repeated upon the retrial of the case.

█ We find no merit to the appellant's complaint about the State's counsel's voir dire of the jury. We do not interpret his colloquy with the jurors as securing promises from them. State's counsel only asked the jury if they would acquit the appellant if they had a reasonable doubt about his guilt, and conversely, if they found him guilty beyond a reasonable doubt, would they set an appropriate punishment. We do not see that any error has been committed here. Obviously, had a juror answered either of these questions in the negative, such juror would have been subject to a challenge for cause.

The purpose of voir dire examination of prospective jurors is to enable counsel to become acquainted with their qualifications, interests, or biases, as a matter of fact, presupposing their statutory competence, and to enable counsel to exercise peremptory challenges. Smith v. State, 205 Tenn. 502, 327 S.W.2d 308 (1959). The scope of inquiry on voir dire rests within the sound discretion of the trial judge. State v. Jefferson, 529 S.W.2d 674 (Tenn.1975); Kennedy v. State, 186 Tenn. 310, 210 S.W.2d 132 (1947). We find no abuse of discretion on the part of the trial judge in this regard.

█ Likewise, we find no merit to the appellant's allegation that the best evidence rule was violated when the court allowed the State to introduce into evidence a photograph of the stolen television sets as well as allowing testimony about the serial numbers on the sets.

After the television sets were recovered, the officers photographed them and transcribed the serial numbers. The sets were then released to an insurance company, which in turn sold them to an employee. At the trial, the photograph of the sets was introduced into evidence, and the officers testified from their records regarding the serial numbers that had been transcribed from the sets.

Initially, it seems to us that if the appellant really thought it would have been advantageous to have the actual television sets produced as exhibits at the trial, he could easily have accomplished this by a subpoena duces tecum.

As a general rule, there is no requirement that stolen chattels, such as television sets, be introduced as exhibits into evidence, for the best evidence rule applies only to writings and documents. Brown v. State, 186 Tenn. 378, 210 S.W.2d 670 (1948); Williams v. State, 179 Tenn. 247, 165 S.W.2d 377 (1942). However, the question remains whether inscribed chattels come within the framework of the best evidence rule.

It has been held that a witness by parol may show the writing on a trunk tag; a license hanging on a wall; the marks on

clothing and other personal property; the brands on a cow; the marks on the heads of certain barrels; or the numbers on tires or automobile license plates. 3 Wharton's Criminal Evidence § 550, at 61 (13th ed. 1973), and cases cited therein.

Wigmore propounds what seems to be the best rule regarding inscribed chattels:

". . . The rational and practical solution is to allow the trial court in discretion to require production of an inscribed chattel wherever it seems highly desirable in order to ascertain accurately a material fact." 4 Wigmore, Evidence § 1182, at 422 (Chadbourn rev. 1972).

In the present case, the police officers who transcribed the numbers from the television sets were both experienced officers, and the numbers were plain, legible, and easily transcribed. Considering the bulky nature of the television sets, and the fact their absence was explained by showing that they had been transferred to a disinterested third person, we are convinced there was no violation of the best evidence rule. Under the circumstances, the trial judge did not abuse his discretion in this regard.

■ Finally, we see no merit to the appellant's argument that the trial court erred in failing to allow him to present an offer of proof.

During the appellant's counsel's re-direct examination of appellant's witness, Richard Lambert, the court sustained objections to several leading questions. The appellant's counsel then stated he wanted to make an offer of proof. After the trial court declined the appellant's counsel's request to excuse the jury so he could make an offer of proof, the court advised him: "If you have any other questions for this witness, you may ask him." Thereafter, a bench conference was held, but the contents are not in the record. The court then inquired: "Is there any other testimony to be offered on behalf of the defendant," to which the appellant's counsel replied: "No, sir."

Thus, the record does not show what the nature of the offered proof would have been. The record does show that the court gave the appellant's counsel an opportunity to rephrase his questions. Further, the record shows that the witness was freely and thoroughly examined by both the appellant's and State's counsel. We see no error on the part of the court with respect to this complaint.

For the reasons expressed in the first part of this opinion, this case must be reversed and remanded for a new trial. It is so ordered.

DWYER, Judge.

In concurring I agree it was prejudicial error to allow the State rebuttal argument when the appellant had waived argument.

ERNEST PELLEGRIN, Special Judge, concurs.