**Franklin PAINTER, Phyllis Painter, and Jama Painter, Plaintiffs-Appellants,**

v.

**TOYO KOGYO OF JAPAN, Mazda Distributor (Gulf) Inc., Lawson Chevrolet Co., and Mazda Motors of America (Central) Inc., Defendants-Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 18, 1984.

Permission to Appeal Denied by Supreme Court Dec. 31, 1984.

---

Robert L. Randall, Jr., Jonesboro, for plaintiffs-appellants.

Norman H. Williams, Robertson, Williams, Ingram & Overbey, Knoxville, for defendants-appellees Mazda Distributor (Gulf) Inc., and Toyo Kogyo, of Japan.

Kenneth W. Kromer, Jr., McCampbell & Young, Knoxville, for defendant-appellee Lawson Chevrolet Co.

## OPINION

SANDERS, Judge.

In this personal injury action the Plaintiffs have appealed from the decision of the circuit court, which entered judgment in accordance with a jury verdict, in favor of the Defendants.

It appears that, at dusk on November 25, 1979, Phyllis Painter was driving her 1978 Mazda GLC automobile in a northerly direction on Asheville Highway. Evidently, the road was at least slightly wet from a light rain or mist that had fallen and was continuing to fall. Seated in the front seat with Mrs. Painter at the time were her daughter, Jama, aged 13, and Jama's boy friend, Danny Broyles.

While on a straight stretch of the highway, and as Mrs. Painter was in the pro-

cess of putting her lights back on bright subsequent to passing a southbound vehicle, allegedly the Mazda's steering locked, became inoperable, and took control completely away from Mrs. Painter. It appears the Mazda proceeded to travel off of the right shoulder of the road, struck a bank, and flipped over. Mrs. Painter was thrown clear of the car, Jama was pinned inside, and Danny Broyles was trapped beneath the automobile.

Because of this accident Mrs. Painter and Jama, joined by Mr. Painter, sued the following parties, Toyo Kogyo of Japan (manufacturer), Mazda Motors of American (Central) Inc. (importer), Mazda Distributor (Gulf) Inc. (distributor), and Lawson Chevrolet Co. (dealer).

In their complaint the Plaintiffs allege that some or all of the Defendants mentioned above are liable in damages because of design and manufacture defects in the steering mechanism, negligence, breach of implied warranties of merchantability and fitness for a particular purpose, and breach of certain express warranties. Mrs. Painter and Jama sued to recover damages for bodily injury and for emotional pain and suffering, whereas Mr. Painter sought recovery for property damage and for the loss of services and consortium of his wife.

The Defendants answered separately. Lawson Chevrolet Co., after answering, cross claimed against the remaining Defendants, alleging it has a right of indemnity from the Cross Defendants should judgment be entered against it. The other Defendants answered, denying the allegations set forth, both in the Plaintiffs' complaint and in Lawson Chevrolet's cross claim.

After interrogatories had been propounded to each of the Defendants and answered by them, a trial was held. At the conclusion of the trial the court entered judgment for all of the Defendants in accordance with the jury verdict. From the trial court's overruling of the Plaintiffs' motion for a new trial, as amended, the Plaintiffs appeal and assign several issues for this court's review.

The Plaintiffs-Appellants first contend that the trial court erred, during the *voir dire* of the jury, in allowing the Defendants' counsel to inform the jury of the unusual number of attorneys who had represented the Plaintiffs. In this connection, it appears that the following discussion took place during the *voir dire:*

"Mr. Hartman (for the Defendant): If the event comes to light that the Plaintiffs have been represented in this case previously by Charlie Terry, Gene Gaby, Kidwell King, Berkley Bell, John Rogers, Olen Haynes, ----

"Mr. Bell (for the Plaintiffs): Objection.

"Mr. Hartman: ---- or Jerry Laughlin ----

"The Court: Overruled.

"Mr. Hartman: Would the fact that the Plaintiffs at one time or another in this case have been represented by these other lawyers, whose names I just now got through calling—would that have any influence on your verdict one way or the other?

All jurors indicate in the negative."

Our courts have explained that "[t]he purpose of *voir dire* examination of prospective jurors is to enable counsel to become acquainted with their qualifications, interests, or biases, as a matter of fact, ... and to enable counsel to exercise peremptory challenges." *Wallis v. State*, 546 S.W.2d 244, 249 (Tenn.Cr.App.1976). *See also Smith v. State*, 205 Tenn. 502, 327 S.W.2d 308 (1959). *See generally* 47 Am. Jur.2d *Jury* § 195 (1969), where it is stated that:

"[f]ull knowledge of all relevant and material matters that might bear on possible disqualifications of a juror is essential to a fair and intelligent exercise of the right of counsel to challenge either for cause or peremptorily. Accordingly, litigants are granted the right to examine prospective jurors on their voir dire in order to enable them to select a jury composed of men and women qualified and competent to judge and determine the facts in issue without bias, prejudice, or partiality."

With the purpose stated above in mind, it is reasonable that:

"[a] wide latitude is allowed counsel in examining jurors on their voir dire. The scope of inquiry is best governed by a wise and liberal discretion of the court, but the adverse litigants should be given the right to inquire freely about the interest, direct or indirect, of the proposed juror, that may affect his final decision. Thus, reasonable latitude should be given parties in the examination of jurors to gain knowledge as to their mental attitudes toward the issues to be tried, for the purpose of aiding them in striking jurors if they are not successful in challenging them for cause."

47 Am.Jur.2d, *supra*, § 201.

The rule that trial judges possess wide discretion in overseeing jury *voir dire* is well supported in this jurisdiction. Specifically, our Court of Criminal Appeals has stated that "[t]he trial judge has wide discretion in controlling examination of prospective jurors and his action will not be disturbed on appeal unless there was an abuse of that discretion." *State v. Cox,* 644 S.W.2d 692, 695 (Tenn.Cr.App.1982). *See also State v. Jefferson,* 529 S.W.2d 674 (Tenn.1975); *Bolton v. State,* 591 S.W.2d 446, 449 (Tenn.Cr.App.1979); and *Smith v. State,* 554 S.W.2d 648 (Tenn.Cr.App.1977). *See generally* 47 Am.Jur.2d, *supra,* § 212.

■ We find no abuse of discretion to have been committed by the trial court in permitting the Defendants' counsel to disclose to the jury the names of those attorneys who had represented the Painters in the present case. It does not appear that any attempt was made by the Defendants' counsel to asperse the Plaintiffs' case, as no comment was made to the jury that the number of attorneys who had represented the Painters was abnormally excessive. Instead, counsel simply listed the names of the attorneys who had represented the Plaintiffs. In this regard, we believe that counsel, for either side, retains a valid interest in attempting to discover whether or not a potential juror might become biased upon learning that a certain attorney (or attorneys) had represented the opposing side. We therefore conclude that the trial court did not err in allowing the aforementioned inquiry to take place.

Next, the Appellants contend the trial court erred in allowing an expert to drill into the sealed steering column in order to determine whether or not foreign particles were in the steering column.

It has been generally stated that:

"[w]here the condition of personal property is in question, the court may in its discretion order it produced at the trial for inspection."

\* \* \* \* \* \*

"The courts generally permit a party to make or perform an experiment in open court before the jury when such experiment will prove, or tend to prove or throw light upon the issues in the case on trial, provided it is made under conditions and circumstances like those existing in the case in issue, *and evidence may be given of experiments and demonstrations made out of court and not in the presence of the jury,* upon the same principles which permit experiments to be conducted in the jury's presence." (Emphasis ours.) 75 Am.Jur.2d *Trial* § 38 (1974).

Further:

"[i]t is clear, however, that experiments, demonstrations, and tests often serve to put the jury in the possession of knowledge, important to their determination of the issues, which they could not so readily or accurately obtain from the testimony of the witnesses, and often may afford evidence more satisfactory or reliable than oral testimony. The courts ... generally ... permit evidence to be given of experiments, demonstrations, or tests performed out of court ... for the purpose of aiding the trier of facts ... in determining the issues of fact."

\* \* \* \* \* \*

"The performance of experiments, demonstrations, or tests in the presence of the jury, or the admission of evidence of experiments, demonstrations, or tests performed out of the presence of the jury, rests in the sound discretion of the trial court ... and this discretion will not be interfered with on appeal unless it is

apparent that it has been abused." 29 Am.Jur.2d *Evidence* § 818 (1967).

In the case at bar certain evidence was presented, suggesting that some substance or particle might have entered the sealed steering mechanism, thereby causing the steering to malfunction. Upon motion of the Defendants, the trial judge, after noting that some substance or particle could have somehow exited from the steering mechanism subsequent to the accident, permitted, over the Plaintiffs' objection, the sealed device to be opened out of court but in the presence of representatives from both sides.

■ An "inspection of [exhibits that] may tend to the discovery of the truth of the matter in controversy" is permitted in this jurisdiction. *City of Jackson v. Pool*, 91 Tenn. 448, 454, 19 S.W. 324 (1892) (citing Greenleaf on Evidence, § 328). *See also Friendship Telephone Co. v. Russom*, 43 Tenn.App. 441, 309 S.W.2d 416, 423 (1957).

■ From a review of the facts, we believe the trial judge handled this entire matter correctly—obviously there was no abuse of discretion on his part in permitting the sealed device to be opened under such guarded circumstances.

■ Next, the Appellants argue the trial court erred in allowing the jury to observe, over the Plaintiffs' objection, a steering shaft offered for identification by the defense counsel, where the shaft's authenticity was in question. The Appellants contend that, while the steering shaft eventually was excluded from evidence, nevertheless, Plaintiffs' counsel appeared to be keeping an important piece of evidence from the jury and this caused prejudice to the Plaintiffs' case.

We cannot agree. We have confidence that the jury understood the steering shaft was excluded, not as an attempt in concealment, but rather on account of its dubious authenticity.

■ We note further that, even were we to conclude the trial court erred in allowing this shaft to be viewed by the jury, such error would be harmless. "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." T.R.A.P., Rule 36. *See generally Cook v. Blytheville Canning Co.*, 210 Tenn. 414, 359 S.W.2d 828 (1962); *O'Brien v. Smith Brothers Engine Rebuilders, Inc.*, 494 S.W.2d 787 (Tenn.App.1973); and *Tiffany v. Shipley*, 25 Tenn.App. 539, 161 S.W.2d 373 (1942).

Nor do we find merit in the Appellants' next assignment of error—that the trial court committed prejudicial error when he made the statement that the answers given by Max Lawson, of Defendant Lawson Chevrolet Co., to the interrogatories propounded to him, were probably answered by his attorneys. In this connection, the record reflects the following discussion took place during the Plaintiffs' counsel's cross-examination of Mr. Lawson:

"Q. Do you recall being served questions to answer sometime back in connection with this lawsuit, in the nature of interrogatories? Do you recall that?

"A. I don't know what that means.

"Q. This would have been sometime in February, 1981, a list of questions directed to you to be answered?

"A. It's possible.

"Q. And the first question was: Identify yourself, your position with Lawson Chevrolet Company, and the period of time you have held that office. Do you recall your answer?

"A. No.

"Q. You don't recall receiving those interrogatories at all?

"A. By definition I don't know what interrogatory is.

"Q. Well, it's a list of questions that were filed with the Court, a copy of which was sent to you, either through your lawyer or directly to you to be answered by you in connection with this suit. Do you not recall?

"The Court: Do you recall what you put ... your attorney probably answered them for you.

"A. He may have. He may have."

■ We don't believe the trial judge's comment caused any prejudice to the Plaintiffs' case. In fact, it would seem the only party possibly harmed by such a statement would have been Lawson Chevrolet Company, since the judge's statement arguably calls into question the credibility of its president and its president's answers to his interrogatories. We therefore believe that any possible error resulting from the trial court's aforementioned statement was harmless to the Plaintiffs. *See* T.R.A.P., Rule 36. *See also Cook, supra; O'Brien, supra;* and *Tiffany, supra.*

As part of their argument under this assignment of error the Appellants rather vaguely imply that Mr. Lawson's answers to questions 11 and 12 of his interrogatories are inconsistent with other testimony.

Questions 11 and 12 of the "Interrogatories Propounded to Lawson Chevrolet, Inc." and the answers read are as follows:

"11. Did you make any repairs to this lock prior to sale to the Painters; after sale to the Painters; or after the accident; or did anyone in your service department make such repairs?

"Answer: No; no; no; no.

"12. Did anyone in the employ of the defendant Lawson Chevrolet Company lubricate the steering locking mechanism? If so, with what type of lubricant and at what times?

"Answer: No."

■ We note that the only answers to interrogatories about which Mr. Lawson was asked at trial were his answers to interrogatory questions 1 and 8. As the interrogatories to Mr. Lawson were never introduced into evidence in their entirety, and as Mr. Lawson was not asked, at trial, about his answers to questions 11 and 12 in particular, we agree with the Appellees' position that Mr. Lawson's answers to the latter two questions are not now reviewable on appeal. *See Allstate Insurance Co. v. Young,* 639 S.W.2d 916, 918–19 (Tenn. 1982).

As their fifth assignment of error the Appellants assert the trial court erred in not declaring a mistrial after defense coun-

sel stated, in the presence of the jury, that the Plaintiffs' attorney should not be allowed to read portions of John Marcosky's deposition into evidence because the Plaintiffs' attorney had procured the absence of Mr. Marcosky.

It appears that a deposition was taken of Mr. Marcosky, an expert hired by the Plaintiffs. At the conclusion of the deposition, Mr. Marcosky was asked if he would be present to testify at trial, to which he replied he would be present if the Plaintiffs' counsel called him. At trial, it appears the Plaintiffs decided not to have Mr. Marcosky testify. However, at trial, after the Defendants' attorney had read from portions of Mr. Marcosky's deposition, the Plaintiffs' counsel's attempt to use the deposition was objected to by the Defendants.

Rule 32.01(3) of the Tennessee Rules of Civil Procedure provides, in pertinent part:

"The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; ... or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

■ After reviewing this rule, the trial court, apparently based upon the "exceptional circumstances" language of subsection (E), allowed the Plaintiffs' attorney to read the desired portions of Mr. Marcosky's deposition into evidence. Although we conclude the trial court was justified, under the rule, to allow the Plaintiffs' counsel to read the deposition, such a conclusion in no way suggests that the defense counsel's objection was improper. His objection simply was based upon the clear language found in Rule 32.01(3)(B), and obviously the Appellants have no ground to

argue that raising such an objection formed the basis for the trial court to declare a mistrial.

The Appellants next contend the trial court erred in allowing the defense counsel to make improper closing arguments, including the following:

(1) Discussion of the number of attorneys that the Plaintiffs had talked to after the commencement of the action;

(2) The statement that the Plaintiffs' attorneys had attempted to keep from the jury vital evidence;

(3) The statement that the case was a concoction of the Plaintiffs' attorneys; and

(4) The statement "that counsel for the plaintiffs had obtained the services of a witness who testified for they know that the statement was untrue and that they, defense counsel, had subpoened the witness to testify."

As to allegations (1) and (3), after a close scrutiny of the Defendants' closing arguments, we do not find any mention of either matter. We strongly suggest that counsel read the record prior to alleging errors for our review.

As to allegation (2)—that Defendants' closing argument included a statement that the Plaintiffs' attorneys had attempted to keep from the jury vital evidence—the only statement made by the defense counsel relative to this contention is Mr. Williams' comment that the Plaintiffs had attempted to prevent the sealed steering mechanism from being opened.

■ We find no error on the trial court's part in allowing the Defendant's counsel to make such a comment. Not only is counsel's statement true, but also the jury, by the closing arguments, already knew that the Plaintiffs, in fact, had attempted to prevent the sealed unit from being opened.

■ It is a recognized rule in this state that the trial court, in its sound discretion, shall determine what is proper argument in a particular case and the appellate courts will not review the action of the trial court except for palpable abuse of that discretion. *J. Avery Bryan, Inc. v. Hubbard,* 32 Tenn.App. 648, 225 S.W.2d 282 (1949); *Jenkins v. Perry,* 52 Tenn.App. 576, 376 S.W.2d 726 (1964); *Klein v. Elliott,* 59 Tenn.App. 1, 436 S.W.2d 867 (1968).

■ As to allegation (4), we are unable to extract from the Appellants' language any intelligible legal argument. Further, as this allegation has not been briefed properly by the Appellants, we deem that said argument has been waived pursuant to Rule 27(g) of the Tennessee Rules of Appellate Procedure (as interpreted in *State v. Goodman,* 643 S.W.2d 375, 378 (Tenn.Cr. App.1982); *State v. Hicks,* 629 S.W.2d 908, 910 (Tenn.Cr.App.1981); and *State v. Doelman,* 620 S.W.2d 96, 99 (Tenn.Cr.App. 1981).

As their seventh and final assignment of error, the Appellants assert the trial court erred in refusing to grant a new trial on the basis of newly discovered evidence of collateral accidents of Mazda vehicles allegedly resulting from steering lockups.

In our recent decision of *Seay v. City of Knoxville,* 654 S.W.2d 397 (Tenn.App. 1983), we addressed the question of granting or denying a motion for a new trial based upon newly discovered evidence. In *Seay,* we first noted that "the courts have an inherent distrust for such motions and they are looked on with disfavor...." *Id.* at 399. We further stated that:

"to justify a new trial for newly discovered evidence it must be shown that the new evidence was not known to the moving party prior to or during trial and that it could not have been known to him through exercise of reasonable diligence."

*Id.* (and cases cited therein).

Here, there was no showing, by affidavit or otherwise, that this "newly discovered evidence" was not known either prior to or during the trial, nor is there a showing, by affidavit or otherwise, of due diligence on the part of the Plaintiffs in discovering said evidence.

In *Seay,* we also noted the "most oft-repeated principle governing motions for a new trial on the basis of newly discovered

evidence" to be that "the granting or denial of such a motion is within the discretion of the trial judge." *Id.* at 400–01 (citations omitted).

■ In the case at bar we find no abuse of discretion by the trial court in its denial of the Appellants' amended motion for a new trial based upon newly discovered evidence. Although this "new evidence" seems to call into question the veracity or accuracy of certain answers of the Defendants to interrogatories that had been propounded to them, we believe the trial court acted within its granted discretion when it overruled the Appellants' motion. In this connection, it ought to be remembered that the Appellants failed to show such evidence was unknown to them until after the trial or that they were unable to discover the evidence despite due diligence. *See Seay, supra.*

■ Finally, the Appellants have filed a "Motion to Submit New Evidence for Consideration of Post-Judgment Facts." The motion, in substance, alleges facts identical to those alleged by the Appellants in their amended motion for a new trial based upon newly discovered evidence. As such, the facts alleged in this motion are not *post-judgment* in nature, to be considered for the first time by this court. Even were these facts actually post-judgment, we conclude that Rule 14 of the Tennessee Rules of Appellate Procedure would not permit this court to consider them. Rule 14 provides, in pertinent part:

> "While neither controlling nor fully measuring the court's discretion, consideration generally will extend only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters. Nothing in this rule shall be construed as a substitution for or limitation on relief from the judgment available under the Tennessee Rules of Civil Procedure...."

The Advisory Commission Comment to this rule provides:

> "Although the appellate court should generally consider only those facts established at trial, it occasionally is necessary for the appellate court to be advised of matters arising after judgment. These facts, unrelated to the merits and not genuinely disputed, are necessary to keep the record up to date. This rule gives the appellate court discretion to consider such facts. This rule is not intended to permit a retrial in the appellate court."

In the very recent decision of *Duncan v. Duncan,* 672 S.W.2d 765 (Tenn.1984), our Supreme Court lent its interpretation of Rule 14. Quoting at length from *Crawford v. Crawford,* 163 Kan. 126, 181 P.2d 526, 531–32 (1947), the *Duncan* court stated:

> "[The Kansas Court] limited the scope of such evidence so as not to include
>
> > "'... what would be mere cumulative evidence, nor evidence which it would be possible to controvert or dispute in the trial court, nor concerning the effect of which there might be differences of opinion, or from which different conclusions could possibly be drawn.' [Citations omitted.]
>
> "As to those matters which could be considered the court stated
>
> > "'Sometimes the court is in need of extraneous evidence respecting some situation or fact to enable it to determine, not the propriety of the conduct of the district court, but the nature of the judgment to be directed. Sometimes a document, or public record, or other item of evidence of like character, material to a proper determination of the appeal and substantially incontestible, is called for, or is examined if produced, and then is treated in the same way as an admission of the parties would be treated if found in the record.'
>
> "We agree with the Kansas court that courts in the exercise of their appellate jurisdiction are not prevented from considering post-judgment facts if such

facts are appropriately limited.... And although they are not controlling, we regard the limitations on the use of post-judgment facts found in the language quoted in *Crawford v. Crawford* to be particularly valuable as a guideline in determining the scope of Rule 14."

*Duncan, supra,* at 767–68.

 From the discussion quoted above, we conclude the facts alleged by the Appellants, even were they post-judgment, would not be the type that Rule 14 intends for an appellate court to consider for the first time on appeal. The facts raised by the Appellants can be controverted and go to the case's merits. They are not "capable of ready demonstration," as Rule 14 requires.

The issues are found in favor of the Appellees. The judgment of the trial court is affirmed and the cost of this appeal is taxed to the Appellants.

PARROTT, P.J., and GODDARD, J., concur.